606 A.2d 599

**W.H. SMITH, formerly Elson's and Zurich–American Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (CATON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 10, 1992.

Decided March 20, 1992.

men's Compensation Appeal Board, 18 Pa.Commonwealth Ct. 22, 333 A.2d 811 (1975).

496

Steven E. Leindecker, for petitioners.

Raymond N. Sanchas, for respondent.

Phyllis T. Procopio, for intervenor, Travelers Ins. Co.

Before COLINS and KELLEY, JJ., and BARBIERI, Senior Judge.

KELLEY, Judge.

Zurich–American Insurance Company (Zurich) appeals from an order of the Workmen's Compensation Appeal Board (board) which affirmed a referee's decision reinstating compensation on the claim of Cecilia M. Caton (claimant), pursuant to Section 413 of The Pennsylvania Workmen's Compensation Act (Act).[1] We affirm.

Claimant suffered a compensable injury to her back on October 25, 1985 while employed by W.H. Smith, formerly Elson's (employer). At that time, employer was insured by Zurich.[2] Claimant was paid compensation pursuant to a notice of compensation payable until her return to work in March of 1986.[3] On October 1, 1987, while lifting and unloading boxes, claimant began to experience pain in her lower back. Claimant returned to work briefly from Octo-

[1]. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772.

[2]. The dates of the 1985 injury are variously stated in the referee's opinion and the notes of testimony as October 20, October 25 and November 1, 1985. Because no party contests the occurrence of the injury, the exact date is not relevant to this appeal.

[3]. Although employer stated that claimant had executed a final receipt on January 15, 1986, this final receipt was not introduced into evidence by any party. *See* Findings of Fact Nos. 7, 15. We note that Zurich alleges that claimant had returned to her full-time employment on January 5, 1986. Again, because the dates of compensation for the prior injury are not at issue, we need not address this apparent inconsistency.

ber 7 through October 14, and in March of 1988, began part-time employment with two other employers.

Claimant initially filed a new claim petition for the 1987 injury against employer and its present insurance carrier, The Travelers Insurance Company (Travelers). Zurich was joined as an additional defendant on the theory that the 1987 injury was a recurrence of the 1985 injury. The sole medical evidence presented consisted of reports and a deposition of Albert J. Massucci, D.C., who had treated claimant following both the 1985 and 1987 injuries. Based on this evidence, the referee concluded that the 1987 injury was a recurrence of the 1985 injury; that claimant was entitled to have the final receipt set aside; and that claimant was entitled to reinstatement of total temporary compensation at the rate of $142.07 per week, modified to $83.23 per week after claimant's return to part-time employment on March 7, 1988. The board affirmed.

Zurich now argues that the referee's conclusion that claimant had suffered a recurrence was not based on substantial evidence, and that the referee erred in calculating claimant's modified partial disability rate. Our scope of review is whether there has been a violation of constitutional rights, error of law, or whether necessary facts are supported by substantial evidence. *Southland Cable Company v. Workmen's Compensation Appeal Board (Emmett)*, 142 Pa.Commonwealth Ct. 612, 598 A.2d 329 (1991).

If a disability is an aggravation of a prior injury, the law treats it as a new injury, and the responsible carrier is the employer's insurer at the time when the aggravation occurs. *Pacemaker Driver Service v. Workmen's Compensation Appeal Board (Merman)*, 131 Pa.Commonwealth Ct. 560, 571 A.2d 5 (1990). However, if the disability is a recurrence of a prior injury, then the employer's insurer at the time of the prior injury is the responsible carrier. *Id.* Whether a disability results from an aggravation of a pre-existing condition or is a recurrence of a prior injury is a question of fact to be determined by the referee. *Id.* (citing *Lackawanna Refuse v. Workmen's Compensation Appeal*

*Board (Christiano),* 74 Pa.Commonwealth Ct. 286, 459 A.2d 899 (1983)).

■ The referee made the following pertinent findings of facts based on the deposition testimony of Dr. Massucci:

13. Dr. Massucci testified that the claimant was previously a patient at his office from November 1, 1985 to March 28, 1986. The doctor testified that on March 28, 1986 the claimant was doing much better symptom wise, however, physically the structural subluxation was not corrected all the way or not as far as it should have been. He stated that to correct the subluxation, the claimant would have required another 6 weeks of care. The doctor stated that the claimant did not follow the care totally to the end and stopped on March 28, 1986. The doctor stated that he did not see the claimant again until October 3, 1987. Dr. Massucci opined that the condition the claimant had on October 3, 1987 was the one she had previously. He stated that there was an actual misalignment that was occurring again and that it was the same type of misalignment in the same places. He stated that the ligaments were possibly weak as it had been in the first place, but there was a regression in the physical structure of the body that became abnormal again. The doctor further testified that the degenerative changes in the claimant's lumbo sacral spine did not cause her October 3, 1987 injury but they did most certainly complicate the injury.

14. On cross-examination, Dr. Massucci testified that the claimant had the same condition in October 1987 as she had in the beginning, November 1, 1985; but that the condition was pretty much corrected and it reoccurred. The doctor further testified that the claimant had very similar symptoms when he initially saw her in November of 1985 and when he saw her in October of 1987, as well as the exact same diagnosis. The doctor stated that the treatment he rendered on both occasions were extremely similar, "almost identical". The doctor stat-

ed that since November 1, 1985 the claimant was never released from his care.

Zurich now contends that because Dr. Massucci admitted that the 1987 injury was the cause of claimant's disability, the referee erred in finding a recurrence rather than an aggravation. We have held, however, that "if a new incident merely causes a recurrence of a prior disability, then the insurer at the time of the original injury is responsible." *Temple University v. Workmen's Compensation Appeal Board (Insurance Company of North America)*, 138 Pa.Commonwealth Ct. 394, 588 A.2d 63 (1991). Here, as in *Temple*, there is substantial evidence of record that claimant had never fully recovered from the 1985 injury, and that the 1987 incident merely caused the symptoms of that injury to recur. Because the referee's conclusion that claimant suffered a recurrence rather than an aggravation is supported by substantial evidence, we must affirm.

Zurich next argues that the referee erred in calculating claimant's partial disability rate. The referee arrived at his calculation by subtracting from claimant's 1985 pre-injury wages of $157.85 the sum of $33.07 per week, which the referee determined reflected claimant's earnings after March 7, 1988. Multiplying the difference by .667, the referee awarded a modified compensation rate of $83.23 per week. Zurich maintains that the referee erred in the calculation of claimant's post-injury earnings.

The referee based his calculation of claimant's post-injury average weekly wage on Section 309 of the Act, 77 P.S. § 582. Zurich does not argue that this calculation was mathematically incorrect, but rather argues that because claimant worked fewer than five days per week, Section 306(b) of the Act, 77 P.S. § 512, rather than Section 309, should have been used.

The referee found that claimant was given medical clearance to perform light duty work for four hours per day.[4] Claimant in fact took a position with a new employer,

4. Finding of Fact No. 19.

working four hours per day, three days a week for a total of twelve hours, for which she received a weekly salary of $48. According to Zurich, application of Section 306(b) would produce an average weekly wage of $80 per week, calculated by multiplying claimant's actual daily wage ($16) by five.

Section 306(b) of the Act provides in pertinent part:

The term 'earning power,' as used in this section, shall in no case be less than the weekly amount which the employe receives after the injury, and in those cases in which the employe works fewer than five days per week for reasons not connected with or arising out of the disability resulting from the injury shall not be less than five times his actual daily wage as fixed by the day,....

Zurich argues that Dr. Massucci limited only the number of hours per day, but not the number of days per week that claimant could work. Therefore, according to Zurich, claimant must show that her failure to work five days per week was related to her compensable injury; citing *Mavrich v. Workmen's Compensation Appeal Board (Phoenix Glass/Anchor Hocking Corp.),* 131 Pa.Commonwealth Ct. 648, 571 A.2d 549 (1990). We do not agree.

In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987), our Supreme Court stated that when seeking a modification of claimant's benefits, an employer must first show that claimant's condition has changed so as to indicate an ability to perform some employment. Employer then bears the burden of showing job availability. *Kachinski,* 516 Pa. at 252, 532 A.2d at 380. In the present case, there is no dispute that claimant was released to return to light duty work, up to four hours per day. There is, however, no indication that employer introduced any evidence of work availability, a fact that distinguishes this case from *Mavrich.*

As claimant correctly points out, *Mavrich* involved a situation in which employer had created a light duty position especially for claimant. Claimant, however, was absent

from her light duty job on numerous occasions. Neither claimant nor employer presented any evidence as to whether the absences were related to claimant's work-related disability. The *Mavrich* court held that in such an instance, claimant stood "in a superior position to have knowledge of why she was unable to report to the *light duty work created especially for her*" (emphasis added). Therefore, the court affirmed the referee's calculation based on Section 306(b). *Mavrich*, 131 Pa.Commonwealth Ct. at 651, 571 A.2d at 551.

Because employer presented no evidence of work availability here, however, the *Mavrich* analysis is inapplicable. Instead, claimant voluntarily sought out and accepted part-time light duty work. While it is true that claimant was medically cleared to work additional hours, *Kachinski* allocates to employer in the first instance the burden of showing that such additional work within claimant's abilities was available.[5]

Accordingly, the board's order is affirmed.

## ORDER

NOW, this 20th day of March, 1992, the order of the Workmen's Compensation Appeal Board, No. A89–798, dated June 24, 1991, is affirmed.

---

5. Claimant also earned a total of $244.46 over a six-month period selling Avon products, which was recognized by the referee and included in his calculation of claimant's post-injury average weekly wage.